Filed 8/25/14  Vaux v. Sherman CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NORMAN E. VAUX II, Individually and as Executor, etc.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARVIN SHERMAN et al.,<br><br>    Defendants and Appellants. | H039276<br>(Santa Cruz County<br>Super. Ct. No. CV170842) |

## I.    INTRODUCTION

In 1986, Marvin Sherman and Marie Sherman (the Shermans) obtained a $2.5 million default judgment in Colorado against Norman E. Vaux, Wilma A. Vaux, and Norman E. Vaux II.  In 2011, the Shermans applied for entry of judgment on the Colorado judgment pursuant to the Sister State Money-Judgments Act.  (Code Civ. Proc., § 1710.10 et seq.)[1]  Wilma Vaux was served with notice of entry of judgment on the sister state judgment in 2011, but she did not move to vacate the judgment within 30 days of being served, as required by section 1710.40, subdivision (b).  In 2012, the trial court granted Wilma Vaux relief from default, thereby allowing her to bring a motion to vacate

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

pursuant to section 1710.40, subdivision (b). The trial court then granted a subsequent motion to vacate the judgment, finding that the Shermans' action on the sister state judgment was barred by the 10-year statute of limitations prescribed by section 337.5.

The Shermans appeal from the trial court's orders granting Wilma Vaux's motion for relief from default and the motion to vacate the judgment.[2] The Shermans contend the trial court erred by granting relief from default because section 1710.40 contains no exception to its requirement that a motion to vacate be filed within 30 days after service. The Shermans also contend that Wilma Vaux's motion for relief from default was not timely under section 473, subdivision (b).

In response, Norman E. Vaux II, who was appointed executor of Wilma Vaux's estate following her death, contends the trial court properly vacated the judgment. Norman E. Vaux II contends that entry of judgment on the sister state judgment was void because the Shermans did not comply with the 10-year statute of limitations specified by section 337.5, and thus that the trial court lacked subject matter jurisdiction over the action.

We will affirm the trial court's orders. We conclude that although entry of judgment on the sister state judgment was not void for lack of subject matter jurisdiction, the trial court did not err by granting Wilma Vaux's motion for relief from default or by granting the motion to vacate the judgment.

---

[2] An order on a motion to vacate brought pursuant to section 1710.40 is appealable. (*Fishman v. Fishman* (1981) 117 Cal.App.3d 815, 819.) "An order vacating a default and default judgment is appealable as an order after final judgment." (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 42 (*Manson*).) We may also review the order granting relief from default as an "intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from." (§ 906.)

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Colorado Proceedings*

On July 17, 1986, the Shermans obtained a default judgment in Colorado against a number of parties, including Norman E. Vaux, Wilma Vaux, and Norman E. Vaux II. On September 18, 1986, the Colorado district court issued an order awarding the Shermans $2.5 million in damages and making all of the defaulting parties jointly and severally liable. On September 14, 1992, the Colorado district court filed an order reviving and extending the judgment for another 20 years—i.e., until September of 2012.

### B.     *Entry of Judgment in California*

On April 13, 2011, the Shermans filed an application for entry of judgment on the Colorado judgment in Santa Cruz County Superior Court. The application named Norman E. Vaux and Wilma Vaux as the judgment debtors and stated that both resided in Brookdale. The application also stated the dates upon which the Colorado judgment was entered and renewed. The Colorado judgment and renewal orders were attached to the application. The appellants' appendix does not contain a notice of entry of judgment on the sister state judgment, but judgment was presumably entered on or about April 13, 2011. (See § 1710.25, subd. (a) [judgment on a sister state judgment is entered "[u]pon the filing of the application"].) The Shermans subsequently filed a proof of service indicating that Wilma Vaux had been personally served with the application and notice of entry of judgment on the sister state judgment on June 11, 2011.

At some point, Norman E. Vaux II filed a motion to vacate the judgment on behalf of Norman E. Vaux and Wilma Vaux, and on September 29, 2011, the trial court denied the motion. The motion to vacate is not contained in the appellant's appendix and the trial court's order does not state the grounds for the motion nor the grounds for the court's denial of the motion.

On October 26, 2011, the Shermans filed an amended application for entry of judgment on the Colorado judgment in Santa Cruz Superior Court. The amended

3

application named Norman E. Vaux II and Wilma Vaux as the judgment debtors and stated that Wilma Vaux lived in Brookdale, while Norman E. Vaux II lived in Colorado.[3] The appellants' appendix does not contain an amended notice of entry of judgment on the sister state judgment, but an amended judgment was presumably entered on or about October 26, 2011. (See § 1710.25, subd. (a).) The Shermans subsequently filed a proof of service indicating that Wilma Vaux had been personally served with the amended application and an amended notice of entry of judgment on November 7, 2011.

At some point, Norman E. Vaux II filed a motion to vacate the amended judgment on behalf of himself only, and on March 16, 2012, the trial court denied the motion. The motion to vacate is not contained in the appellant's appendix and the trial court's order does not state the grounds for the motion nor the grounds for the court's denial of the motion.

### C.     Motion for Relief From Default

Wilma Vaux filed a motion for relief from default dated July 20, 2012. Wilma Vaux asserted she had been terminally ill when she was served with the original and amended applications and notices of entry of judgment. As a result of her illness, she had not been able to advise anyone she had been served with those documents, and she had taken no action to respond. Citing section 473, Wilma Vaux requested the court "excuse her excusable neglect." Wilma Vaux noted that the trial court could grant her relief on equitable grounds even if her motion was not timely under section 473. Wilma Vaux indicated that if granted relief from default, she would move to vacate entry of judgment on the sister state judgment because the action was barred by the applicable statute of limitations.

In support of her motion, Wilma Vaux provided a declaration from her son, Norman E. Vaux II. In his declaration, Norman E. Vaux II stated that Wilma Vaux was

---

[3] Although it is not clear from the record provided to this court, it appears Norman E. Vaux (senior) may have passed away prior to the California litigation.

4

92 years old and terminally ill. She had been suffering from cognitive impairment issues since about January of 2010, and she had been bedridden since about December of 2011.

The Shermans filed opposition to Wilma Vaux's motion for relief from default on August 3, 2012. First, they argued that relief could not be granted because Wilma Vaux had died on July 26, 2012. Second, they argued that even if Wilma Vaux was incapacitated at the time she was served with notice of entry of judgment on the sister state judgment, she failed to explain why Norman E. Vaux II, who had power of attorney for her, had not taken any action on her behalf. Third, they argued that section 1710.40, which provides a 30-day period in which to vacate entry of judgment on a [sister state] judgment, is the "sole and exclusive means by which a judgment debtor may challenge a [sister state] judgment" and thus that it "preempts relief" under section 473. Fourth, they argued that Wilma Vaux's motion for relief from default was not timely under section 473. Fifth, they argued that the 10-year statute of limitations in section 337.5 did not apply.

On September 26, 2012, Norman E. Vaux II was appointed executor of Wilma Vaux's estate.

### D.    *Initial Hearing on Motion for Relief From Default*

At a hearing on October 18, 2012, the trial court stated its tentative ruling:  that section 337.5's 10-year statute of limitations applied, rendering entry of the sister state judgment "void ab initio," but that Wilma Vaux had not met the standard for relief from default under section 473. Specifically, the declaration from Norman E. Vaux II was not admissible evidence. The court continued the hearing to give Norman E. Vaux II the opportunity to present further evidence.

Following the hearing, Norman E. Vaux II submitted a declaration from a medical doctor who had treated Wilma Vaux for the 10 years prior to her death. The doctor stated that Wilma Vaux had been suffering from cognitive deficiencies since June of 2010. The deficiencies had persisted until her death. Wilma Vaux was bedridden from October of

5

2011 until her death. Due to her terminal illness, Wilma Vaux required assistance with all daily living activities and she was unable to manage her own affairs.

Norman E. Vaux II also submitted a declaration. He asserted that Wilma Vaux never told him she had been served with documents. His cousin found the documents and gave them to him in April of 2012.

### E. Continued Hearing on Motion for Relief From Default

The continued hearing on Wilma Vaux's motion for relief from default was held on November 27, 2012. The trial court found that the evidence presented showed that Wilma Vaux was "not of full mental capacity" and that there was not a significant delay in Norman E. Vaux II's efforts to pursue remedies on her behalf. The court therefore granted relief from default, indicating that Norman E. Vaux II would be allowed to file a motion to vacate entry judgment on of the sister state judgment. The court indicated it was granting relief from default "under [section] 473."

The trial court's order granting Wilma Vaux's motion for relief from default was filed on December 5, 2012. It appears that notice of entry of that order was sent on December 10, 2012.

### F. Motion to Vacate Entry of Sister State Judgment

On January 3, 2013, the trial court heard Norman E. Vaux II's motion to vacate entry of judgment on the sister state judgment. The motion to vacate is not in the appellant's appendix, and the appendix does not contain any opposition to the motion. The trial court's order indicates that the motion was brought by Norman E. Vaux II on behalf of himself as an individual and on behalf of Wilma Vaux in his capacity as executor of her estate.

At the hearing, the trial court reiterated its prior view that entry of judgment on the sister state judgment was barred by section 337.5's 10-year statute of limitations, such that entry of judgment on the sister state judgment was "void ab initio." The court then

6

granted the motion to vacate entry of judgment; the court's written order was filed on January 10, 2013.

### III.    RELEVANT STATUTES

#### A.    *Sister State Money-Judgments Act*

The Sister State Money-Judgments Act (§ 1710.10 et seq.) was adopted in 1974 "[p]artially in response to the constitutional mandate of the full faith and credit clause." (*Washoe Development Co. v. Guaranty Federal Bank* (1996) 47 Cal.App.4th 1518, 1521 (*Washoe Development*); see U.S. Const., art. IV, § 1.)  "The Act provides an expeditious and economical registration procedure for enforcing sister-state money judgments in California.  The procedure offers a judgment creditor the opportunity to obtain a California judgment simply by registering his or her sister-state judgment with the specified superior court, thus avoiding the necessity of bringing a completely independent action.  [Citations.]  With certain statutory exceptions, the new judgment has the same effect as an original California money judgment and 'may be enforced or satisfied in like manner.'  [Citation.]" (*Washoe Development, supra,* at pp. 1521-1522.)

A judgment creditor may apply for an "application for entry of a judgment based on a sister state judgment" in the county in which the judgment debtor resides. (§ 1710.20, subds. (a) & (b)(1).)  The application must include "[a] statement that an action in this state on the sister state judgment is not barred by the applicable statute of limitations."  (§ 1710.15, subd. (b)(1).)  Judgment on the sister state judgment is entered "[u]pon the filing of the application."  (§ 1710.25, subd. (a).)

The judgment creditor must "promptly" serve notice of entry of judgment of the sister state judgment on the judgment debtor, and the notice must "inform the judgment debtor that the judgment debtor has 30 days within which to make a motion to vacate the judgment."  (§ 1710.30, subd. (a).)  "Not later than 30 days after service of notice of entry of judgment," the judgment debtor may move to vacate the judgment "on any ground

7

which would be a defense to an action in this state on the sister state judgment."
(§ 1710.40, subds. (a) & (b).)  One common defense to enforcement of a sister state judgment is that "suit on the judgment is barred by the statute of limitations in the state where enforcement is sought."  (Law Rev. Comm. Comment to § 1710.40.)

### B.     Relief from Default

Under section 473, subdivision (b), the court may "relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."  A party applying for relief must make the motion "within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473, subd. (b).)

If a motion to vacate a default judgment is made more than six months after the default was entered, " 'the motion is not directed to the court's statutory power to grant relief for mistake or excusable neglect under Code of Civil Procedure section 473, but rather is directed to the court's inherent equity power to grant relief from a default or default judgment procured by extrinsic fraud or mistake.'  [Citations.]" (*Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 314 (*Gibble*).)

### C.     Section 337.5

The statute of limitations for "[a]n action upon a judgment or decree of any court of the United States or of any state within the United States" is 10 years.  (§ 337.5, subd. (b).)  A cause of action on a sister state or foreign judgment accrues "as soon as the judgment is final, conclusive, and enforceable" under the laws of the state or country where it was rendered.  (*Manco Contracting Co. (W.W.L.) v. Bezdikian* (2008) 45 Cal.4th 192, 208 (*Manco*).)

8

# IV. DISCUSSION

## A. *Statute of Limitations/Subject Matter Jurisdiction*

The parties agree that the statute of limitations had expired before the Shermans applied for entry of the sister state judgment. As noted above, section 337.5, subdivision (b) provides that there is a 10-year statute of limitations for "[a]n action upon a judgment or decree of any court of the United States or of any state within the United States," and a cause of action on a sister state judgment accrues "as soon as the judgment is final, conclusive, and enforceable" under the laws of the state or country where it was rendered. (*Manco, supra,* 45 Cal.4th at p. 208.) Once the "cause of action for recognition accrues," the judgment creditor must bring an action to recognize or enforce the sister state judgment within 10 years. (*Ibid.*)[4]

The parties disagree about the effect of the running of the statute of limitations. Norman E. Vaux II contends that the Shermans' application for entry of judgment on the sister state judgment was "facially[]void" because it was not timely filed within the 10-year statute of limitations of section 337.5, subdivision (b). Thus, Norman E. Vaux II claims, entry of judgment on the sister state judgment was void and the trial court could vacate it at any time. We disagree.

"In civil cases, the statute of limitations is not jurisdictional but merely serves a procedural function and constitutes an affirmative defense that is waived unless pleaded and proved. [Citation.]" (*People v. Williams* (1999) 77 Cal.App.4th 436, 457-458.) "The statute of limitations in a civil action is generally held to be a defense that may be waived by failure to plead or by previous contractual provision; and a party apparently entitled to the defense may nevertheless be estopped, under some circumstances, to invoke it. Hence, the jurisdiction of the court is not affected by the running of the statute." (2 Witkin, Cal. Proc. (5th ed. 2008) Jur., § 103, p. 676.)

---

[4] The Shermans do not argue that the statute of limitations was extended by their renewal of the judgment in Colorado.

9

The record indicates the Colorado judgment became final in 1986. At that point, the Shermans had 10 years to file an application for entry of judgment in California before the statute of limitations expired. (§ 337.5, subd. (b).) The Shermans' application was filed in 2011, approximately 25 years after the Colorado judgment became final. Although the statute of limitations had long expired, entry of judgment on the Colorado judgment was not thereby rendered void; Wilma Vaux was required to assert the statute of limitations as a defense by way of a motion to vacate under section 1710.40. Since Wilma Vaux did not raise any defense within the 30-day period provided by section 1710.40, we must consider whether the trial court properly allowed her to proceed by way of a motion for relief of default.

### B.      Jurisdiction to Grant Motion for Relief from Default

Noting that section 1710.40 establishes a 30-day period in which a judgment debtor can move to vacate entry of a sister state judgment, the Shermans contend that the trial court could not extend this time period by granting Wilma Vaux's motion for relief from default. According to the Shermans, nothing in section 1710.40 permits the trial court to "revive" the right to move to vacate entry of a sister state judgment, and nothing in section 473 "creates a right of revival." Below, Wilma Vaux argued that the trial court had jurisdiction to grant her motion for relief from default either under section 437 or on equitable grounds.[5]

We do not agree that section 1710.40 precludes a judgment debtor from moving for relief from default pursuant to section 473, subdivision (b). "Section 473(b) as a whole is the primary statutory source of the trial court's authority to grant relief from orders or defaults entered against a party through mischance." (*Standard Microsystems Corp. v. Winbond Electronics Corp.* (2009) 179 Cal.App.4th 868, 893.) Section 473,

---

[5] The issue of equitable relief was proposed by respondents below, so both parties had the opportunity to brief it on appeal. (See Gov. Code, § 68081; *People v. Alice* (2007) 41 Cal.4th 668, 677.)

subdivision (b) "is a *remedial* statute, and as such is to be construed liberally, which is to say expansively, to favor its object that cases be adjudicated on the merits rather than determined by default," and thus generally governs over a statute that "inflicts a procedural forfeiture," which is interpreted "such that uncertainties should be resolved *against* its application." (*Id*. at p. 894.)

The Shermans have cited no authority supporting their position that, once section 1710.40's 30-day period for a motion to vacate has passed, a trial court may not grant a judgment debtor relief from default pursuant to section 473, subdivision (b). None of the cases and statutes upon which the Shermans rely support their position. For instance, in *Liquidator of Integrity Ins. Co. v. Hendrix* (1997) 54 Cal.App.4th 971 (*Liquidator*), the judgment debtor brought a timely motion to vacate pursuant to section 1710.40. Unlike in this case, the judgment debtor in *Liquidator* did not seek relief from default after the expiration of section 1710.40's 30-day period. Rather, the judgment debtor in *Liquidator* tried to use section 473 to challenge the validity of the underlying sister state judgment. (See *id.* at p. 976.) The court held that section 473 did not provide a ground to set aside entry of judgment on the sister state judgment, as section 473 was "not a defense but a procedural remedy for setting aside a default or a default judgment in California." (*Id.* at p. 978.) Here, Wilma Vaux was not attempting to use section 473 to challenge the validity of the underlying Colorado judgment; she raised section 473 as a procedural remedy for setting aside entry of judgment on the sister state judgment in California.

" 'The discretionary relief provision of section 473, subdivision (b) applies to *any* "judgment, dismissal, order, or other proceeding." ' [Citation.]" (*Henderson v. Pacific Gas & Elec. Co.* (2010) 187 Cal.App.4th 215, 229.) We conclude that after entry of judgment on a sister state judgment pursuant to section 1710.10 et seq., a judgment debtor may seek relief from entry of judgment pursuant to section 473, subdivision (b) even after the expiration of section 1710.40's 30-day period for filing a motion to vacate. As discussed below, a judgment debtor may also seek relief from entry of judgment on a

11

sister state judgment pursuant to the court's " 'inherent equity power to grant relief from a default or default judgment procured by extrinsic fraud or mistake.' " (*Gibble, supra,* 67 Cal.App.4th at p. 314.)

### C.  *Timeliness of Section 473 Motion*

The Shermans contend that even if Wilma Vaux could seek relief from entry of the sister state judgment pursuant to section 473, subdivision (b), the trial court erred by granting that relief because section 473, subdisivion (b) requires a motion be brought "within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (See *Manson, supra,* 176 Cal.App.4th at p. 42 ["The six-month time limit for granting statutory relief is jurisdictional and the court may not consider a motion for relief made after that period has elapsed."].)

As noted above, the amended judgment was presumably filed on or about October 26, 2011, and Wilma Vaux was served with the amended notice of entry of judgment on November 7, 2011.  The 30-day period in which she could move to vacate pursuant to section 1710.40 expired on December 7, 2011.  She filed the motion for relief from default about seven and a half months later, on July 20, 2012.

The trial court indicated it was granting relief from default "under [section] 473." However, as Wilma Vaux noted in her moving papers, even if her motion was untimely under section 473, the trial court could grant her relief from default on equitable grounds. Since the motion for relief from default was filed more than six months after the time in which Wilma Vaux could have moved to vacate pursuant to section 1710.40, the motion was properly " 'directed to the court's inherent equity power to grant relief from a default or default judgment procured by extrinsic fraud or mistake.' [Citations.]" (*Gibble, supra,* 67 Cal.App.4th at p. 314.)

The Shermans suggest that the trial court was not authorized to grant relief from default based on its inherent power to set aside a judgment procured by extrinsic fraud or mistake.  The Shermans note that the "entire discussion" below concerned Wilma Vaux's

12

"illness, age, and infirmity." To the extent the Shermans are arguing that Wilma Vaux's infirm mental and physical condition could not be the basis for granting relief pursuant to the trial court's equitable power to set aside a judgment, we disagree. " 'Extrinsic mistake involves the excusable neglect of a party.' [Citation.]" (*In re Marriage of Thorne and Raccina* (2012) 203 Cal.App.4th 492, 505.) "Extrinsic mistake is found when a party becomes incompetent but no guardian ad litem is appointed [citations]; . . . or when the complaining party was disabled at the time the judgment was entered [citations]." (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471-472 (*Kulchar*).) Thus, the trial court could, in the exercise of its inherent power to set aside a judgment procured by extrinsic fraud or mistake, grant relief from default if it found Wilma Vaux was incompetent or disabled at the time she was served with the amended notice of entry of judgment on the sister state judgment.

To the extent the Shermans are challenging the trial court's decision to grant Wilma Vaux relief from default because it found her incompetence or disability qualified as an extrinsic mistake, we find no abuse of discretion. (See *Weitz v. Yankosky* (1966) 63 Cal.2d 849, 854-855 [a motion to set aside a default judgment based on the court's inherent equity power "is addressed to the sound discretion of the trial court"].) "[T]o qualify for equitable relief from default on the basis of extrinsic mistake," a party " 'must satisfy three elements. First, the defaulted party must demonstrate that it has a meritorious case. Second[ ], the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action. Last[ ], the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered.' [Citation.]" (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 (*Rappleyea*).)

Here, Wilma Vaux had a meritorious defense to the action, as entry of judgment on the sister state judgment was barred by the 10-year statute of limitations of section 337.5, subdivision (b). (See *Rappleyea, supra,* 8 Cal.4th at p. 982.) Second, Wilma Vaux articulated a satisfactory excuse for not presenting that defense originally: her

13

mental and physical condition. (See *ibid.; Kulchar, supra,* 1 Cal.3d at pp. 471-472.) Wilma Vaux presented evidence that, at the time she was served with the amended notice of entry of judgment on the sister state judgment, she suffered from a terminal illness and cognitive deficiencies rendering her bedridden and unable to manage her affairs. Third, there was not a significant delay in Norman E. Vaux II's efforts to pursue remedies on Wilma Vaux's behalf: the motion for relief from default was filed about seven and a half months after Wilma Vaux was served with the amended notice of entry of judgment on the sister state judgment. Thus, the trial court did not abuse its discretion by granting relief from default on the basis that Wilma Vaux's incompetence or disability qualified as an extrinsic mistake,

### D.    *Inconsistent Orders*

Finally, the Shermans contend that the trial court erred by granting relief as to Norman E. Vaux II individually because his prior motions to vacate were final. Below, the trial court acknowledged those prior orders and indicated it had the power to reconsider its own orders. Under section 1008, "a court may reconsider final as well as interim orders on its own motion." (*In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1312.)

## V.    DISPOSITION

The December 5, 2012 order granting Wilma Vaux's motion for relief from default and the January 10, 2013 order granting Norman E. Vaux II's motion to vacate entry of judgment on the sister state judgment are affirmed.

14

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MÁRQUEZ, J.

_____

GROVER, J.

15